IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                       CRIMINAL ACTION NO. 3:09-00109

CLIFTON FRANK ROSS
     also known as "Pooh"

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant, Clifton Frank Ross's, Motion to Suppress Evidence and Statement (Doc. 25). For the reasons that follow, the Court **DENIES** the motions.

On September 15, 2008, the Huntington Police Department conducted a traffic stop that led to the arrest of an individual for possession of marijuana. The individual agreed to cooperate with the Huntington Police Department and gave a statement regarding his purchase of the marijuana. The individual (hereinafter referred to as "CI") informed the Huntington Police Department that he purchased two twenty-dollar bags of marijuana from Defendant on September 15, 2008, at 925 13th Street, Huntington, West Virginia.[1]

Following the CI's statement, the Huntington Police Department conducted surveillance of Defendant. On September 29, 2008, officers with the Huntington Police Department observed Defendant enter the residence at 1316 Huntington Avenue, Huntington, West Virginia. Cognizant

---

[1] Although the *Response of the United States of America to Defendant's Motion to Suppress* (Doc. 28) states that the CI used in this case "made a controlled buy from the residence on September 16, 2008," U.S.'s Resp. at 2, the subsequent briefing on this matter, and the testimony of the Huntington Police Department at the motion hearing on August 10, 2009, indicate that there was not a controlled buy related to this case on September 16, 2008. Instead, the delivery referred to in the criminal complaint underlying the warrant for Defendant's arrest is the CI's purchase on September 15, 2008.

of Defendant's whereabouts, and armed with the information provided by the CI, Detective Sidney Hinchman of the Huntington Police Department applied for an arrest warrant for Defendant and for a search warrant for the body of Defendant (and the immediate area) that day (September 29, 2008).

The Criminal Complaint Detective Hinchman filed to support the warrant application was based upon the fact that "on 9-16-2008 the defendant while at 925 13th St. did deliver a controlled substance (field tested marijuana) to a C.I. used by the Huntington Police Dept." U.S.'s Resp., Ex. B. Additionally, the Affidavit and Complaint for Search Warrant filed by Detective Hinchman stated that Defendant "did deliver marijuana (field test positive) while at 925 13th Street"; "is concealed in 1316 Huntington Ave., brick duplex residence"; "was observed by officers going into the residence"; and "has a warrant on file for delivery of a controlled substance." Def.'s Hr'g Ex. #2.

After acquiring the arrest warrant and the search warrant for the body of Defendant, the Huntington Police Department went to 1316 Huntington Avenue to execute these warrants. Upon entrance, the officers found Defendant lying in the living room. In addition to Defendant, there were multiple people in the residence. The officers arrested Defendant and conducted a protective sweep of the residence, which, according to the testimony of Detective Shane Bills, "cleared the residence for safety". During the sweep, an officer saw evidence of criminal activity – oxycontin, a plastic baggie, and approximately $1,000 in U.S. currency – in plain view. The officer alerted Detective Bills, who also witnessed the evidence.

Based on his observation, Detective Bills applied for a warrant to search the residence (Search Warrant #2), also on September 29, 2008. In the "Statement of Information" Detective Bills provided in support of the warrant, he stated that "[u]pon entering and securing the residence ... [i]n

plain view ... was a plastic baggie, oxycontin, and a large amount of money." U.S.'s Hr'g Ex. #1. And, that "[a]ll of this considered in its totality, leads this officer ... to believe that illegal drugs and other items listed on the 'Items to be Seized' attachment are located in 1316 Huntington Avenue, Huntington, Cabell County, WV." *Id.*

Later that day, the officers returned to the residence at 1316 Huntington Avenue to execute Search Warrant #2. During the subsequent search, officers seized oxycontin, U.S. currency and other items consistent with drug trafficking.

In the pending motion, Defendant argues to suppress (1) statements he made subsequent to his arrest, and (2) evidence seized during the execution of Search Warrant #2. The Court **DENIES** Defendant both motions and will discuss the reasons for each denial in turn.

## I. DEFENDANT'S STATEMENT

Following his arrest, Defendant was Mirandized and interviewed by the Huntington Police Department. In his interview, Defendant admitted to his role in the sale of oxycontin. Defendant does not contend that the Miranda warning issued to him was insufficient. Rather, Defendant argues that his statement should be suppressed because his arrest was unlawful and his admission would not have occurred but for the unlawful arrest. Specifically, Defendant asserts that his arrest was unlawful because the magistrate who issued his arrest warrant lacked probable cause to do so. Thus, the admissibility of Defendant's statement depends upon whether the magistrate properly found probable cause to arrest Defendant.

The standard of review for a magistrate's determination of probable cause is one of "great

deference". *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). Probable cause is analyzed under a totality of circumstances standard "[a]nd the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Illinois v. Gates,* 462 U.S. 213, 238-39 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271 (1960)). Nonetheless, as Defendant argues, the magistrate's task of determining probable cause includes a duty to analyze the "veracity" and "basis of knowledge" of persons supplying hearsay knowledge in the affidavit before him. *Id.* at 238.

In the instant case, the magistrate issued a warrant for Defendant's arrest based upon a sworn criminal complaint stating that "on 9-16-2008 the defendant while at 925 13th St. did deliver a controlled substance (field tested marijuana) to a C.I. used by the Huntington Police Dept." U.S.'s Resp., Ex. B. Defendant contests the sufficiency of this statement to establish probable cause because (1) the informant is unnamed, and (2) the statements are "conclusory". Def.'s Supplemental Mem. at 4. Further, Defendant's argues that the complaint provides neither the informant's source of knowledge nor the informant's veracity or reliability. These arguments are unpersuasive.

First, in the criminal complaint, Detective Hinchman's informant alleges first-hand knowledge of the delivery of the controlled substance. The informant told the detective that he had purchased the marijuana in his possession from Defendant. As noted in *Illinois v. Gates*, first-hand knowledge is a reliable basis of knowledge; one that "entitles [a] tip to greater weight than might otherwise be the case." *Id.* at 234. Additionally, the complaint states that the controlled substance delivered to the CI field tested positive as marijuana, indicating that the CI was facing criminal charges of his own. This provides additional indicia of reliability, for, "[t]he informant's interest in obtaining leniency created a strong motive to supply accurate information." *United States v. Miller*,

925 F.2d 695, (4th Cir. 1991) (noting that an informant has "nothing to gain" by providing false information because he "could [risk] an additional charge for falsification"). In sum, based on the fact that the affidavit stated that the CI contained first-hand knowledge, the CI was subject to criminal charges, and the substance field tested positive as marijuana, the criminal complaint suffices to support the magistrate's practical, common-sense determination that probable cause existed to arrest Defendant. *See, e.g, Gates*, 462 U.S. at 244.

Because probable cause existed to issue the warrant, the motion to suppress Defendant's statements is **DENIED**.[2] Further, because the Court finds the magistrate had probable cause to issue the warrant for arrest, Parties' arguments concerning the application of *United States v. Leon* need not be addressed.

## II. ITEMS SEIZED DURING THE EXECUTION OF SEARCH WARRANT #2

Defendant argues that the items seized pursuant to Search Warrant #2 should be suppressed because the search that lead to the discovery of the evidence that provided the basis for Detective Bills' application for Search Warrant #2 exceeded the permissible scope of a search incident to arrest. Again, this argument is unpersuasive.

Detective Bills indicated in his "Statement of Information" and again at the motion hearing

---

[2]In addition to his argument that the magistrate lacked probable cause, Defendant contests the validity of the arrest warrant and the search warrant for the body of Defendant based on a discrepancy between the date of the marijuana sale to CI, September 15, 2008, and the dates listed on the Criminal Complaint and the Affidavit and Complaint for Search Warrant. Such technical errors are not sufficient to undermine the warrants. *See Gates*, 462 U.S. at 235-36 ("[C]ourt should not invalidate ... warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.") (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

on August 10, 2009, that the oxycontin, plastic baggie and U.S. currency that served as the basis for the application for Search Warrant #2 were in plain view when the officers executing Defendant's arrest warrant conducted a protective sweep of the residence. Further, Detective Bills testified that there were multiple persons present at the residence at 1316 Huntington Avenue at the time of Defendant's arrest.

Law enforcement is permitted to conduct a protective sweep of an area when a reasonably prudent officer is justified in believing that the area to be swept could present a danger to those on the scene of an arrest. *Maryland v. Buie,* 494 U.S. 325, 33-334 (1990). This includes the danger posed by unseen third parties. *Id*. Such a protective sweep must be based on specific, articulable facts that warrant a reasonably prudent officer in believing a danger exists. *Id*. at 334. Further, the sweep must be limited to those spaces where a person posing a danger may be found and to the time it takes to complete the arrest and depart. *Id.* at 335-36.

In the instant case, multiple people were at the residence at 1316 Huntington Avenue at the time of Defendant's arrest. Based on this fact alone, the officers on the scene were warranted in conducting a protective sweep of the entire residence. Because the oxycontin, plastic baggie and U.S. currency were in plain view during the protective sweep, that evidence properly served as the foundation for the complaint for Search Warrant #2. *See United States v. Jackson*, 131 F.3d 1105, 1108-09 (4th Cir. 1997). Defendant's motion to suppress this evidence is therefore **DENIED**.[3]

---

[3]Defendant also argues that the evidence seized pursuant to Search Warrant #2 should be suppressed because the items listed on the sheet entitled "Property to be Seized" pertain to the possession and sale of cocaine, not oxycontin. This argument is unpersuasive. First, warrants should not be construed in a hypertechnical manner. *See supra,* note 2. Second, "[a]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant." *United States v. Washington*, 852 F.2d 803, 805 (4th Cir. 1988) (quoting *Ricket v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987) (other citations omitted). In his "Statement of

The Court **DIRECTS** the Clerk to send a copy of this written opinion and order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: August 19, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

Information," Detective Bills attested that all of the evidence collected up to that point "considered in its totality, leads this officer ... to believe that illegal drugs and other items listed on the 'Items to be Seized' attachment are located in 1316 Huntington Avenue, Huntington, Cabell County, WV." U.S.'s Hr'g Ex. #1. Detective Bills' "Statement of Information" was attached to Search Warrant #2. Thus, it is incorporated into the warrant and provides particularity. Because the statement refers to illegal drugs generally, it provides a sufficient basis for the seizure in question.